Matter number 171106 Mark McGuire v. Estate of Robert Cunningham et al. Good morning Mr. Tabb. Good morning your honors. May it please the court my name is Michael Tabb. I'm accompanied here by my partner Thomas Green and we represent the relator Mark McGuire. With the court's permission I would like to reserve three minutes for rebuttal. Yes you may. Thank you your honors. The False Claims Act's first to file rule is not a limitation of jurisdiction. It does not pass the Supreme Court's that was illuminated in our law and its progeny. And no court of appeal that has looked at the first to file on a jurisdictional basis has found that it meets those requirements of the Supreme Court cases. As I understand our case law we've never really examined that question. We have dicta in passing that suggests that under much earlier Supreme Court case law it was a jurisdictional requirement. Do we have an opinion flatly holding it is a jurisdictional requirement? This court has stated as much in essentially unrefined unexamined opinions what Judge Ginsburg referred to as drive-by decisions None of our decisions are drive-by decisions. I bet there's been no analysis since the Supreme Court. There has been no analysis since this line of cases relating to the first to file doctrine. That is correct. And this court has noted that there is a serious question here. It has elected in previous cases not to look at this but it has noted that its prior holdings to that effect are questionable. There is doubt about those decisions. So there are a number of ways of approaching this case. Why should we decide this question? Your Honor, it does not have to decide this question. But it may be desirable to. I would agree with that, Your Honor. The issue has come up several times. It comes up and frankly it could have an effect if this case is remanded because this is not the typical case where you have a relator and a defendant and they argue about it. This is a series of relators. And if the defense is not jurisdictional, it could affect questions of who can raise the defense below, whether the defense has been waived, who has standing. Well, doesn't it also affect if it is jurisdictional, it's a Rule 12B1 issue. If it is not jurisdictional, it's a Rule 12B6 issue. And there are different standards and one looks at different things.  Under Rule 12B6, normally we would compare the allegations of the complaints. That is correct. In fact, the court did compare the allegations of the complaints and found that because it couldn't under 12B6 look at the Cunningham appendix, it found that the cross-claim did state a cause of action. In fact, it found that... Actually, if you look at the district court's opinion closely, it did first look at the case both on the complaints and found that Cunningham could only prevail if he looked at the disclosures. It then said this is a 12B1 case, we are not barred by the limitation to complaints and it then looked at the disclosures we believe in properly. That is one way of addressing this case. A second way of addressing this case is whether or not the False Claims Act First to File Bar applies to anything other than key tam actions filed under Section 3730B. And frankly, no court has ever held other than this one that has with the exception of the district court in Medicare and that decision was reversed. If I can go back to your first argument, if one were to conclude this was non-jurisdictional and that the 12B6 standards have to apply, then we're left with a comparison of what was said in Mr. Cunningham's complaint filed earlier than your client's complaint. The government investigation, the outcome, the settlement and what it was based on and the allegations in your complaint. Now, are you prepared to argue to us why if one looks at the allegations of the complaints that your client alleged particular fraudulent schemes that were not alleged by Mr. Cunningham? Keeping in mind Judge Torea's prior decision in the Cunningham case. I think your Honor could reach that decision because I think your Honor essentially made that decision in the Cunningham action. That the Cunningham decision looked exactly at what are the factual basis, what are the claims that comprise Mr. Cunningham's confirmatory UDT testing fraud claims. In fact, if you look at the appeal, if you look at his appellate brief, go back and look at it at pages 15 to 18, you'll see that what he said was the basis of our case is the same thing as the custom profile fraud. It's that a millennium improperly gets standing orders, that millennium routinely does negative tests, negative confirmation testing, that millennium gets these tests without individualized assessment. And your Honors looked at that allegation and you didn't find it. And you didn't find it because it's not in the complaint. This court said that the Cunningham complaint was based on specific facts that were comparable to the California Defamation Act, a double billing fraud. So this court has looked at what is in the Cunningham case and what is not in the Cunningham case and it's decided it. It had the same question before and it rejected the Cunningham decision. You may have overstated your case a bit because Judge Torea's opinion found two series to be barred, but remanded on a third series. Absolutely true. So, yes, thank you. Could you describe why you think that third series does not match up with the claims in your client's complaint? Yes, Your Honor. The three theories that this court found when it looked at the three aspects of the Cunningham case was essentially multiple billing for the same qualitative test. The second theory was that because of the incentives that physicians filed, the physicians performed excessive numbers of screening tests. That because they could make so much money, they screened people who didn't need to be screened. And then the third aspect was because of the excessive number of screens, there were excessive confirmations. And what the court found were barred was the multiple billing for the same test and the confirmatory fraud tests. Now, McGuire's case and the government's complaint intervention were only about confirmatory fraud. Those were the only parts of what McGuire was testing. He wasn't talking about screening. That's a completely different test. The claims are favored by somebody else. The essential facts of a screening fraud are completely different than the essential facts of a confirmatory fraud. And that's the only part of the Cunningham case that survived. So if that's all Cunningham had, the essential facts of his fraud are different than the essential facts of McGuire's fraud. I may have misunderstood, but didn't the federal government make some regulatory changes which, in fact, prevented the type of fraud, third theory fraud? Exactly, Your Honor. And if you looked at our original complaint, we referenced that in the McGuire complaint, in the complaint, and we said essentially that was the scope of a separate False Claims Act action, the Cunningham case. And we said that this fraud, the custom profile fraud, was done when that loophole was closed. When the government closed the loophole, they had to come up with a new theory. They had to come up with a new scheme. And this was a second scheme, a different scheme, which used custom profiles, again, to exploit vulnerabilities in the reimbursement system. As I understood the McGuire complaint, in addition to the custom profiling, which meant all sorts of unnecessary testing on urine samples in many different ways, that the company also changed its practice and provided the basic urine cup for free to doctors who signed up for the custom profile? That is correct, Your Honor. There is a kickback allegation, too, that part of the way to get these people was to give them free cups. Now, that is not in the Cunningham case. And moreover, if one looks at the disclosures, which shouldn't, but Cunningham in his disclosures said there are no kickbacks here. We admit that Millennium has never paid kickbacks. But you did not specifically allege kickbacks, but the government provided for three, the urine cup for free. That's true. But if you sign up for all this unnecessary testing, they took it a little further and they said it's a kickback scheme. That is correct, Your Honor. We would say that we did include the essential facts. What are the essential facts? The facts is you're paying a bribe. The bribe is the cups. You're getting the cups for free, and they're related. We think that was the essential facts. In any event, the government agreed that our complaint was, in fact, part of the case. And the government agreed that the relators in this case, whoever it is, would get 15% not just of the custom profile fraud money, but 15% of the cup money. So the government has essentially acknowledged that at least some of the relators, and we're the only relator that had the POC cup fraud, that that was information in a relator's complaint that led to a recovery. So, yes, the government has said that. My time is almost up. I did want to say a word or two about disclosures. I think this Court has made it clear that disclosures are not properly reviewed in first-to-file cases. It made it clear in VeeleyCare. We read Duxbury to have made it clear. Judge Tureo also wrote the Duxbury opinion, so he knows what he meant. But I think that it's clear that, essentially, if you do not have the essential facts in a complaint, you can't look at supplemental items, whether it's the disclosure or anything else or whether it's filed before or after a supplemental case. Suppose they have been filed with the complaint. I don't think it makes a difference. A court has to determine what are the essential facts of the first action. And the best place and, in fact, the only place where essential facts are put are in a complaint, in a complaint's allegations. But the disclosure is incorporated into the complaint. It becomes part of the complaint. Ordinarily, it is not, Mary. Ordinarily, it is. No, actually, ordinarily, you will not find disclosures in the case. Occasionally, it is. No, I understand what I'm saying, but in the event that they had incorporated by reference and made it part of the complaint, it would have been part of the complaint. I suppose so if it was publicly filed. But I don't think they could then take the position, as they took in this case, that, no, it's privileged. You can't see it. You don't know what the position is. If you're not going to make that public so that anyone can evaluate whether my claim is in or not in the prior case, it's not part of the complaint. And, of course, it wasn't incorporated by reference in this case. Thank you, Your Honor. Thank you. Mr. Bogdanow, good morning. May it please the Court, Your Honor. Your Honors, my name is Michael Bogdanow. I represent Robert Cunningham's estate as well as four other relators who agree with his position that he was the first to file. With me is Robert Griffith, who brought the Cunningham complaint, as well as in the courtroom is Robert Cunningham's daughter, who has pursued this claim. Your Honors, Judge Gorton had it correctly. He found correctly that Robert Cunningham provided the government with notice of Millennium's fraud, which was, from day one, excessive, unnecessary medical testing, urine drug testing, first in doctors' offices and then by Millennium's confirmation testing in Millennium's labs. That was always the heart of the fraud. The method of doing it might have changed when Medicare's... Your Honor, even were this Court to change decades of jurisprudence and say that it had to be done... Could you answer my question? It would hold up even on a comparison of the complaints, Your Honor, although we don't believe that it should be restricted to that, but yes, I'll tell you why. Paragraph 15 of Cunningham's complaint, he alleged a pattern of services and complaints and claims that were not medically necessary. Paragraph 17. Millennium encouraged physicians to perform and order medically excessive and unnecessary testing, which enabled Millennium to profit from the billing for reflex screenings and confirmations. Paragraph 23. Millennium encouraged doctors to bill for qualitative tests because the reimbursement far exceeded the value of the test, and Millennium encouraged physicians to order more testing than they otherwise would have, the initial screens and the confirmatory tests. Throughout the complaint, the heart of this fraud was disclosed. What about the federal government's patching up the hole to prohibit reimbursement for the mechanisms that Millennium had been using? So Millennium then needed a different scheme, and the government outlined that transformation in its complaint. And you're saying that the different scheme, merely because you made those general allegations in the complaint, and then Medicaid closes the loophole, and Millennium horribly goes to a new scheme, that that is sufficient to meet the first to file? No, Your Honor, I'm not saying that. Okay, what is your argument? I'm saying that the scheme was always excessive testing, which had to start in the doctor's offices. Millennium had to get the doctors on board. So its first method of doing that was convincing them that you could multiple bill for a single test, convincing them to order far more tests than necessary, both in their offices and confirming. Medicare closes the multiple billing approach. So then Millennium still needed the doctors on board. So now it says, we'll give you these tests for free, and it's still telling them, test excessively and get those samples to us so that we can then re-test. But they use a different mechanism for the test excessively. They use the standing order mechanism, which basically says the doctor gets a urine test, and automatically, no matter what it shows, it's sent on for further supplemental testing, including for a number of tests that, even if further testing were needed, shouldn't have been done. This is a new mechanism of fraud. Well, the standing order, and first of all, the reflex confirmation was in the complaint. And then the standing order and the multiple confirmatory tests and negative results that should have never happened was included in Cunningham's disclosure statements. So we're back to that question. But they were just, even including an actual form that showed 11 confirmatory tests by Millennium that had been negative in the doctor's office. That was provided by Cunningham to the government, and Judge Wharton was aware of that. But even if you stick to the complaint, the question is, did Cunningham give the government enough that it would discover this fraud? And we think absolutely it did, because what Cunningham gave was Millennium's going out there and getting doctors on board, and this is how they're doing it today. And they're doing it so that the samples can get to Millennium, obviously, because Millennium needs to do excessive testing so it can make money and bilk the government. Once the government was on notice of that, of course the government would see that, okay. Yes, but the government chooses not to intervene in your case. And then Mr. McGuire comes along and says, look, there are new mechanisms of fraud. And the government then chooses to intervene. I'm a little, I actually am not sure how much to count the government's decision to intervene. I know there are some cases that say, look, this is a matter of their resources and prosecutorial discretion. So it doesn't make much difference. But it seems to me it can't be negligible that the government chooses not to intervene in some cases but chooses to intervene in other cases. Yes, I can give you two thoughts on that, if I may, Your Honor. First, yes, the case law is clear that we can't decide why the government decided to intervene in McGuire's case, in two of the appellee's cases that are affiliated with Cunningham and who support Cunningham's view that he was the first to file. There are a million reasons, a collection of reasons, and we can't speculate on that. But I can give you one that's quite clear. At the time that the government filed its intervention, Cunningham's case was up on appeal. It had been dismissed, and it was in this court pending appeal. It would make a lot of sense that the government at that point did not intervene in a case that had been dismissed by a lower court and was subject to an appeal in this court. However, when the case settled, when all the cases settled, the government and the parties required that Cunningham be part of that settlement. And the settlement had a list of eight relators on it, with Cunningham listed first because it was a chronological list. So the government took Cunningham's case seriously enough that it wanted Cunningham to release all of Cunningham's claims and to participate in the settlement and to be part of the case. I'm not sure I draw very much from that. Of course the government wants all possible relator claims to be resolved as to who in the end is going to get that 15%. Right, which is the question before the court. But again, it wouldn't have made a lot of sense for the government to intervene in a case that at that moment was dismissed. Now, the government's complaint that it did file was just like Cunningham's. I'll quote from it. Millennium caused physicians to order UNA drug testing that was not reasonable and necessary. And that was at the heart. And then came McGuire's complaint more than two years after Cunningham's. And what did it allege? Millennium's marketing practices led to the performance of medically unnecessary lab tests. It's all the same, and it started with Cunningham. I think that I know the court is interested in the subject matter jurisdiction issue, so I think I should probably touch it briefly with the time I have. This court has for decades, as has the Fifth Circuit, the Ninth Circuit, the Tenth Circuit, stuck with the view that first-to-file analysis raises a factual attack on subject matter jurisdiction. And it has done so because of some very good reasons. First of all, it is an exception-free statutory provision. That's well settled. Second of all, it is written in clear, mandatory language. It does not have to do with whether Congress intended it to be jurisdictional. If you look at the different provisions of the False Claim Act, there are some where Congress has made it quite clear that the federal courts shall have no jurisdiction to decide claim A, B, or C. That language is not present in the first-to-file clause. And Judge Millett on the D.C. Circuit has written a very persuasive opinion saying that in light of Supreme Court case law, both specifically on first-to-file and more generally about what is jurisdictional, this clause is plainly not jurisdictional. And then the Second Circuit has adopted that. Why shouldn't we adopt that? For a few reasons, Your Honor. First of all, it is, as the Sebelius Supreme Court said, there are no magic words on the congressional intent. This language, quote-unquote, no person other than the government may bring a related action based on the facts underlying the pending action, could not be clearer and more mandatory. It sounds like a cause-of-action provision as opposed to no court shall have jurisdiction to hear these claims. Your Honor, in Qui-Fun Wong, if I'm pronouncing that correctly, by the Supreme Court, the court pointed out that seri decisis can keep a jurisdictional view like the one of this court and the other circuits in place, even after the new, more restrictive view by the Supreme Court, unless there's been an explicit Supreme Court case or a piece of legislation that would override that. And this court has had, as I said, for decades, its view on subject matter jurisdiction. To go back to a question that you asked my brother, on some levels, it doesn't matter. It doesn't matter because Judge Gordon was given by the relators the single question of who's entitled to the relator's share. And he correctly saw that it's really not a 12b-6, because 12b-6 doesn't look at two complaints. A 12b-6 looks at the face of the complaint that sought to be dismissed. So he correctly saw that it wasn't a 12b-6, really. And he didn't say what my brother has said in oral argument and in briefs, that he couldn't decide this based on a comparison of the complaints. He did not say that. He said he couldn't decide this looking at McGuire's submissions. And that's a 12b-6 analysis. Instead, when he looked at McGuire's complaint and the materials provided by Cunningham, that he could see quite clearly who was the first to file. He had the authority to render that decision under the settlement, and he rendered it in a non-erroneous fashion. His opinion is quite analytical and quite careful and thoughtful. So even without the question of subject matter jurisdiction, it was a correct decision. And the biggest difference when it's subject matter jurisdiction, Your Honor, is whether the dismissal is with prejudice or without. That's what the courts are grappling with. That question doesn't matter in this case, because McGuire and Cunningham and all the relators not only had agreed to dismissal with prejudice as part of the settlement, but they've all been dismissed with prejudice. So there is no difference if it was a non-jurisdictional decision. And if McGuire was therefore told, you're still dismissed because you were not first to file, but you could file again. He can't file again because of the agreement, which is another reason that Judge Borton's decision should be affirmed. Also, for subject matter jurisdiction, the question is, what was the state of affairs when McGuire filed his complaint? And at that point in time, Cunningham had the complaint. It was filed. It was a pending action and another ground that Judge Borton's decision should be affirmed. I see that the time is short. So I'll give this court four reasons that Judge Borton's decision should be affirmed, and there are certainly others. We haven't had a chance to go into it in detail, but there is a timeliness issue on this appeal. We do believe that the order, not the long opinion, but just the dismissal order, entered separately on the docket. We do believe that under this court's Rule 28.0, a docket entry can constitute something which can lead to an appeal, and that's what happened here. McGuire knew it. He filed a motion for reconsideration, and he missed the 30-day deadline. He claimed 60 days, but the government was no longer in the case, and the government was never a party to the cross-claim. The other grounds I've mentioned. Even if this should have been a non-jurisdictional dismissal, McGuire still can't refile, or if it's viewed as arising out of the authority given to Judge Borton by the relators to make this decision. It was a non-erroneous factual finding, and even if you limit it to comparing the complaints, which would be a great change in this court's jurisprudence, and it would be contrary to Duxbury's statement that you could look at outside materials in a first-to-file analysis, even if you limit it to the complaints, it was Cunningham's complaint that gave the government enough notice to discover all the fraud that it later did. Thank you. Thank you, Your Honors. Your Honor, you've heard it alleged that from day one, Cunningham supposedly had a custom profile fraud in his complaint. That's simply not the case. The court will recall that at the same time Cunningham filed his action, he filed against four other drug testing companies, none of whom were doing custom profile frauds, and his confirmatory fraud allegations were the same. They are identical. He was making generic fraud allegations against every competitor of Callaway, and he had no idea that a custom profile fraud was involved. His case to be first-to-file had to include all of the essential facts. All of the essential facts. That would include, if it's a standing order fraud, the word standing order. And, of course, there's no mention of standing order complaints. There's no mention of testing negatives. There's no mention of individualized assessment. Cunningham latched onto this for the first time when he was in front of this court, when news of this settlement or news of this investigation had spread, and that's when he started talking about things that were never in his complaint to begin with. Second, Your Honor, Judge Lynch asked specifically about the importance of the government's intervention decision. And it's not significant as to whether the case has merit or not, but it is significant for an important part of this court's analysis of first-to-file, which is, did the Cunningham complaint put the government on notice of the alleged fraud? Now, what happened in Cunningham? Cunningham filed a complaint, and the government investigated. And because of the disclosures, we know they did a thorough job investigating. There was a lot of back and forth. Then, when the time was up for the seal of the court, the government said, we don't know whether we're going to intervene or not. We're still looking at it. Subsequently, they said, you know what, we're not going to intervene. And then when this case was in front of the district court on a motion to dismiss, the government said, we assent to the dismissal. If you dismiss, that's fine with us, which is certainly not the conduct you would expect if the government thought that Cunningham's case was put on notice of a very large fraud that resulted in $227 million. McGuire files his complaint shortly after the government assents to it. The government reads the complaint, and within two months, it is knocking on Millennium's door. When it's told Cunningham, we assent to your dismissal, saying, we're interested in your marketing problems. We're interested in the way you did custom profiles. So, Your Honor, it's clear from the facts. The facts are clear that it was McGuire's case that put notice, and Cunningham's case, despite all the disclosures, despite the back and forth, did not put anybody on notice of what became custom profile fraud, and it certainly didn't put anybody on notice of the POC cup fraud. Finally, if you look at page 17 of Judge Gordon's decision, you will see that he does say that if you look at the complaints alone, Cunningham does not show he's first to file. He only can do that if he relies on the disclosures. Thank you, Your Honor. Thank you. We'll have a short break.